Oh yay, oh yay, oh yay. The Honorable Appellate Court, 5th District, State of Illinois is now in session. The Honorable Justice Welch presiding, along with Justice Cates and Justice Barberas. The case this morning is number 519-0396, People v. Hodge. Arguing for the appellant, State of Illinois, is Pat Daly. Arguing for the appellee, Charles Hodge, is Levi Harris. Please note, only the clerk of the court is permitted to record these proceedings today. We're ready to proceed. I guess I'll start then. Mr. Daly. Thank you, Your Honors. May it please the court, Mr. Harris. For the record, my name is Patrick Daly. I'm here on behalf of the people of the State of Illinois. This is an appeal brought by the state from a judgment of the circuit court, quashing an arrest and suppressing evidence. The basis that was asserted by defendant and was the basis for the court's granting of the motion to suppress, was that a stop of a vehicle in which defendant was a passenger was unlawful on the basis of a obstructed license plate statute where the court had held, based on the Supreme Court case of People v. Gayton, that a trailer ball hitch is not a basis in which to charge an individual with a violation of that statute. There has to be an actual obstruction of the license plate itself. In its arguments below, the state did not really defend that basis for the stop. The principal basis asserted by the state below, and that is which forms the basis of our arguments here on appeal, is that the officers had, at least at a minimum, a reasonable and articulable suspicion to stop the vehicle in which defendant was a passenger, and that was on the basis of an observed drug transaction and information provided to a surveilling officer of drugs and packaging inside the vehicle in defendant's possession. Your honors are, of course, aware of the facts, having read the briefs, but I do think that at least the recitation of the facts here is important to a degree because of their centrality with the state's argument. Mr. Daley, before you go into the facts, I appreciate you both coming in. The arguments that were made below were about the trailer hitch. Now your arguments are going to be about the probable cause to stop. Do you think that's an issue that the trial court didn't hear these arguments? No, I don't think so, your honor. In fact, it's an interesting question because the state's argument below was, in fact, that the basis for the stop was justified on the basis of the observation of the drug transaction and the testimony of the officers at the hearing largely focused on that aspect of it. The error from the state's perspective that we rely upon on appeal is that the court simply didn't consider any of that evidence and didn't even mention it in its order as if it was never even presented, and that evidence having been presented and not been rebutted in any way should at least should prompt this court to reverse the judgment or at least at a minimum prompt this court to remand the cause back to the circuit court for it to make a determination on that basis. As it stands, though, the state has presented evidence below based upon the testimony of detectives Dwyer and Thompson that while conducting surveillance at a hotel in Marion, Dwyer observed a confidential informant, a confidential source who has not been identified yet, engage in what Dwyer described as a hand-to-hand transaction. Dwyer then received information from his confidential informant that the defendant was observed in possession of multiple bags of individually wrapped suspected contraband methamphetamine inside a black bag. Dwyer then communicated to other surveilling officers to that choreograph was the basis for the utility of this particular vehicle code statute to stop defendant's vehicle. Ensuing that was a request to search which was granted and ultimately recovered from the defendant's possession was a black sock which contained I believe seven or eight individually wrapped baggies of field-tested positive methamphetamine. Is there a question in this case as to the consent? No, that was not raised by defendant below. So the only issue is the stop, not the entry into the vehicle? That's correct, your honor. That's correct. And so on that basis where the state has presented evidence from several witnesses, two witnesses, that there was, well, really Dwyer is the principal witness because Dwyer is the one who actually received the information from the confidential source. That was passed on to Detective Jesse Thompson and he and Officer Baldwin then engaged in the vehicle stop. Defendant was told at the time of the stop that the basis of the stop was this obstructed license plate, but Thompson indicated at the hearing that this was in fact what he described as a buy bust where a drug transaction is observed and a stop is made in or money that's being used in the transaction, etc. Usually when money, they mean by that like marked money or money that had been provided to the confidential source for the transaction. In this case, the money, the marked money was never recovered? There was really no testimony in that regard, I don't think, your honor, but there was, if it was, there was nothing to indicate it was recovered, yes. What did they record, the serial numbers? I don't know if that, I don't know if they ever really went into it in that detail, your honor. Most of it just involved the hand-to-hand transaction and that that information being passed on to the officers. I mean, to be perfectly frank, the state didn't really get into a lot of those kind of, you know, surveillance bust details, maybe not as much as it should have, which would have maybe clarified some of the issues for us. A question posed by the court was why didn't you just stop the car for the drug transaction? Why did you have to choreograph the vehicle, you know, the vehicle traffic violation? I think it's a fair question. The state posited below and, you know, based on my experience as a prosecutor and I, with the caveat, this is not, was not testified to as that confidential sources are typically protected. And so, you know, it's not always a wise idea to protect your source by arresting someone for a drug transaction minutes after it occurs. It's going to be pretty apparent who narked. It really, it's really as simple as that, your honors. I think that what we have here, the defendant's principal argument is going to be that the court implicitly found in its ruling that the state's evidence was not credible. While this court defers to credibility determinations by the court below, the fact remains that the court never made any credibility determinations in this case because it simply never, never even considered the evidence that the state had presented, which is somewhat strange given the fact that the state's argument was almost wholly devoted to evidence related to drug transaction. The state did not in any way or shape or form attempt to defend the stop on the basis of the traffic violation, I guess, at least implicitly conceding that was probably a losing argument and most likely would be a losing argument based on Gaten. But there being an independent and valid and unrebutted basis for the traffic stop to occur, the trial court should have at least considered that evidence. And if it was going to determine that that evidence was improbable or unbelievable, it would at least provide some basis for this court to ascertain whether the court's judgment was reasonable under the facts presented. But there's no contravening facts, there is no opposing facts, there's no other version of events. Defendant's not obligated to put... I'm sorry. Was there any attack on Dwyer's credibility or anything? Dwyer was cross-examined, but I don't think that there was any real dispute, nor was it even really asserted by defendant that Dwyer's evidence was not credible in this regard. The argument was almost principally involved with and directed at the initial basis for the stop that was asserted by defendant, which was the violation of the traffic code. And I forget which officer provided the affidavit to get the charges filed, and basically had only indicated on there that he was pulled over for the traffic stop. But Dwyer provided testimony, and I don't know if it was in the form of affidavit or not, prior to the hearing, that he instructed the officers to pull him over under the ruse of a traffic stop based on his observations. Is that correct? That's correct, Your Honor. I don't remember who did the affidavit, but what you stated is correct. I think it was Thompson, but I'm not positive. I believe it was Thompson as well. I don't have it under my appendix, and I'd have to go back and look at the record. So, I guess my question, I want to hear just your thought on whether or not it is permissible under those circumstances where one officer observes a felony take place to instruct the other officers to pull him over under a ruse? Yes, that's known as the collective or imputed knowledge doctrine, probable cause or information acquired by one officer which are shared with other officers and ultimately form the basis for the stop is considered to be considered in the collective. In other words, all officers share the knowledge of the principles. So, that would be a perfectly valid basis for Dwyer to convey that bypassed information. What was the court's hang-up with this stop? Was it that there was no indication in the traffic stop? I say with all honesty, I don't have the foggiest idea because the court never discussed it. Right. Well, that's why I was wondering if you had a better perspective than me. I don't. The only thing that the court really sort of hinted at during the course of the hearing itself and maybe during the argument was the question of why didn't the officers just simply stop the vehicle for the drug transaction as opposed to going through the entire ruse of the vehicle code. So, you know, whatever is on the judge's mind didn't really make its way ultimately to the court's order and nor did the court really sort of reveal anything beyond that as far as whether it found the totality of the state's bypassed evidence to be not credible or simply fabricated. You'll have rebuttal. Thank you. Can I ask one more? Sure, go ahead. One other thing that I saw was this is being charged as a class one felony based on the methamphetamine that was discovered. Yes, Your Honor. But in fact, the lab result was less than the threshold for a class one. Isn't this a class two because of the 4.9 grams as opposed to 5.0? Yes, you're probably right, Your Honor. At the time that they do the charges in this case, they're going on basically field weight, but those charges can be amended later on once the crime lab comes back with its specific findings, but those don't usually come for weeks later. Okay, so the only reason that wasn't brought up was because it never got that far. Yeah, I mean, at this point, we are right. I mean, before obviously, you'll get to a plea or a hearing, that would be a trial, that would be a consideration. I have one last question. Mr. Daly, how do we know that the judge didn't consider probable cause because the judge specifically asked during the hearing why they choreographed the stop instead of using the drug buy? I mean, how do we know in light of the fact that he asked that question, that he didn't consider it when he entered his order? Well, I think, Your Honor, that the question itself doesn't really reveal what the court's thoughts were with regards to whether it believed or did not believe that what happened had happened as far as the state's version of events. But I would think that, and just as a matter of logical progression, that if the court's problem with the stop ultimately relies not only simply upon the traffic violation, but that the improbability or unbelievability of the state's witnesses, that the court would have made that certainly courts have to look at these cases with an eye towards the next level, and judges' credibility determinations are essential. Indeed, if the court had come out and held that the state's evidence was not credible, that might have changed the complexion of this case altogether. But we don't have that finding, and for some reason or another, I can only speculate. I apologize just as well. I'll finish this thought, and then I'll be done. Answer my question. Okay, then I'll stop. Thank you, Your Honors. Okay. Apolli, you may proceed. Okay, Your Honors. As mentioned, I'm Assistant Defender Levi Harris, and I'm appearing on behalf of Mr. Hodge, the apolli. May it please the court, very quickly, before I forget, I want to address two questions. One, Justice Welch, you asked whether any recorded money was ever found. The testimony was no, and that's at page 14 and 15 of the record. Yeah, okay. So we're here asking the court to affirm the trial court's order quashing harass and suppressing evidence, where the trial court's findings of fact and credibility determinations, to the extent that they were explicit, were not against the manifest weight of the evidence, and where the legal conclusions that flow from those findings are sound. First of all, talking about the findings of fact, they were not against the manifest weight of the evidence. So from our perspective, it's an unusual position we find ourselves in, from OSAD's perspective, this is pretty straightforward. The trial court's factual findings are looked at in the light that's most favorable to the party that prevailed below, that's Mr. Hodge. Unless those findings are arbitrary or unsubstantiated, reviewing courts should affirm them. In this case, the trial court's relevant finding of fact is straightforward, said Mr. Hodge was a passenger in a motor vehicle, which was stopped in an admitted choreographed stop for the stated violation of a license plate obstructed by a That finding is substantiated in the record by Sergeant Baldwin's stipulated testimony, with part of Detective Thompson's testimony, there was some conflict internally in his own testimony, and of course, with Detective Thompson's affidavit, which did not come in at the hearing, but, you know, he was cross-examined about that affidavit. Now, the state argues that the trial court overlooked or ignored unrebutted testimony from Detective Thompson and Detective Dwyer that the real reason for the stop was a drug buy that Dwyer witnessed. However, the trial court specifically stated in its order that it had reviewed the facts and the evidence presented at the hearing, and it had reviewed the arguments of the parties. As the state well knows, and is always ready to point out when the shoe is on the other foot, the fact that testimony is unrebutted doesn't mean that it has to be accepted by the court as true. The trial court is the one that's in the best position to observe the demeanor of witnesses and to decide who is telling the truth. In this case, this was a defense motion, and the defense had the burden of putting on a prima facie case that would support quashing and suppression. The defense did that by putting on evidence that supported its version of the facts that came in Sergeant Baldwin's testimony. The state put on its alternative theory with alternative facts that supported its version of the events, and the trial court accepted the defense version that it heard at the hearing. The state makes its position pretty clear in the reply when it says that the only relevant credibility assessment to the extent one should be done in the absence of pertinent trial court findings is whether there was, in fact, an observed drug transaction. If so, then any traffic stop was reasonable. So what the state is asking the court to do there is to make its own credibility determinations, believing Detective Thompson's testimony at the hearing and Detective Dwyer's over Sergeant Baldwin's and over what had been in that affidavit beforehand. Mr. Harris, let me stop you a moment. We know that the money wasn't found, but we do know that in support of the credibility that drugs were, in fact, found in the vehicle, were they found in the black bag or sock as described by the confidential informant? They were in a sock, I believe. So what the confidential informant relayed to the police officer then would have been substantiated by what was found in the vehicle? What Detective Dwyer testified that the confidential informant told him was substantiated by what was found in the vehicle. So when you talk about credibility, isn't this court allowed to look at that kind of fact, even though we were viewing light favorable to you? Aren't we allowed to look at the fact that the information provided by the confidential informant was, in fact, true when the police stopped and searched the vehicle? Well, Your Honor, you're not really adequately able to weigh that because this information from Detective Dwyer about what the confidential informant told him is completely post hoc as far as we know. And this gets to a question that Justice Barbaros asked, which is whether there was something before the hearing from Detective Dwyer or Sergeant Dwyer about this drug buy. The answer is there's nothing in this record that supports that. His report is not in the record. We don't have a write-up of what the confidential informant said. What we have is Detective Dwyer's testimony that he wrote such a report. That information was never disclosed to the defense until the night before the hearing, and that report doesn't appear in our record. So it would be the state's burden if it supported the state's case to make sure that that's in the record. It's not here. All we have to go on is Dwyer's testimony looking back at the stop that, oh yeah, the confidential informant magically—I don't want to say magically—the confidential informant told me something that turned out to be true. We don't have anything contemporaneous with the stop that would verify that. Was there a motion for discovery, to comply or compel discovery in this by the defense? Your Honor, I would assume so, and I'm sure Mr. Daly will have the answer to that, and I could find that as well. Sure, and the reason for my asking that is when did the defense ask for the information that was tendered the night before the hearing from Dwyer? Was it asked for prior to that, or was it not asked for prior to that? And if it wasn't asked for, is this argument somewhat waived because it wasn't requested? Your Honor, two things about that. One, I don't know for sure. I could pull up the record quickly and look. The other thing is the state always has a duty to disclose these things, just as defense does. We know that there are burdens that are imposed in discovery independent of the motions that are filed, particularly when the charge had been pending for a year and a half, and it supported the state's position in this motion hearing. I think it would be incumbent upon the state to disclose that, yes. Do you want me to try and look it up real quick? No, we can do that in another time. Okay, I was going to say, it's one of the benefits of sitting here in front of my computer. I don't usually have that luxury. Sure. Back to what I was arguing. Nothing about the court's findings warrants an action by this court that would substitute its credibility findings for the circuit court's. They were not against the manifest way to the evidence. As far as the legal conclusions that flowed from that, I could be wrong, but I think even Mr. Daly would agree with me that if the facts were as the state found them that the basis of the stop was the trailer ball hedge, then legally the evidence had to be suppressed. The state didn't make any attenuation argument. This kind of gets to what Justice Cates was asking about whether there was an issue about consent. The reason the parties didn't argue about consent in the hearing was because the state didn't make any kind of attenuation argument that would say, that would have substituted consent and said yes, even if the stop was illegal, the consent was an intervening circumstance that would allow this evidence to come in. Finally, I would just say that I've never had the benefit of being a prosecutor. I would understand the import of concealing the identity of your sources, particularly if you thought they were in danger, but that shouldn't go to concealing the true facts from courts. Maybe you're concealing that from defendants and their cronies, but in playing hide the ball with defense counsel and with the court up into the eve of the hearing, I don't think that's something that should somehow excuse the state's negligence in disclosing this. We would just ask your honors to affirm. Thank you. Thank you, Counsel Rebuttal. Thank you, your honors. Justice Barberis' question, what I gather from what I remember reading in the record was that there was some discussion about the timing of the disclosure of information or evidence related to the officer's drug buy stop. It was very late coming. There was no real objection or protestation raised by a defendant at the time of the hearing with regards to proceeding forward with the hearing on the basis of what the state intended to present at that hearing. It's hard for me to characterize that as far as whether that forms some sort of independent basis. I would not agree to the proposition that it somehow impugns the credibility of the witnesses as much as it may relate to whatever mechanisms were in place to provide information to the state in the first place, which obviously turned it over as soon as it got it or at least became aware of it. The problem that I have, I guess, from credibility assessment standpoint is I understand the argument that this court's not in a position to make credibility determinations. That's not really what I'm asking this court to do. What I'm asking this court to look at is that you have a set of facts which are not rebutted, which are not considered by the court, and therefore they stand as they are. As they are, they stand for the proposition that the officers had justification to stop this vehicle. If this court is uncomfortable with that, then I think the appropriate remedy would be to send it back to the trial court with directions for it to consider the state's alternative argument so that findings could be made on the record so that at least the parties, including the state, would have the opportunity to know what the court is thinking and then provide whatever argument might be necessary to attack that in this court. Certainly, the state's challenge in that regard would be greater, but at least at this point, we're left with a case where the court simply just never answered the state's position. My gloss on this, as I was about to get into at the end of my initial argument, is that I think that the court viewed this case as a pretext stop where the officers had stopped this vehicle on the basis of a traffic violation, that the traffic violation did not, in fact, occur, and that the sum result of that is that regardless of what other motivation that the officers had or whatever facts that the officers had in hand to stop the car and to engage in this investigation and ultimately arrest the defendant were immaterial in view of the fact that the traffic stop basis itself, and that was articulated to the defendant at the time of the stop, was unlawful. And so, that fact tainted the entire traffic stop regardless of anything else that happened or regardless of other information that the officers may have possessed at the time. So, again, I would just... Mr. Daley... Yes, Your Honor. Would Mr. Harris say that if we remanded it as you request that the state is really getting a second bite at the apple, so to speak? No, I don't think so, Your Honor, because the remand is simply before the courts to make a ruling. Well, but his... I'm sorry. Go ahead. His argument was that the courts already had that opportunity and in its general language that we see in all court orders, you know, that we've reviewed the facts and the arguments of counsel, that we're to infer from that that they looked at, that the court looked at the credibility and looked at this issue. And I'm looking at the record now and it's clear that the officers testified this was a pretextual stop. I mean, so did the court have that in front of it at the time? No. Number one, Your Honor, it's not a pretextual stop because they had a valid basis to stop the vehicle on the basis of the drug transaction. So, a pretextual stop would be to stop for a traffic violation and try to dig up a drug transaction or drug evidence. In this case, there was no pretext needed. They already had the basis to make the stop. Well, this is their testimony. This is an officer's testimony that it was pretextual. Well, pretextual, however, is a legal definition, not an officer definition. And the legal definition of a pretextual stop is that you engage in a stop on the basis of one reason, to look for evidence of something else. The officers didn't stop the defendant here to look for evidence. The officers already had information that there was evidence. They simply used the vehicle violation stop in order to, as my position would be, to conceal the nature of the stop or the origins of the information that prompted the officers to make the stop in the first place. And the inferred or imputed believability argument makes more sense in the context of competing versions of facts, which do not exist in this case. There's only one version of facts, and those are the versions of facts which the court never addressed. And on those facts, it's pretty clear from the record that the officer's stop was, at a minimum, valid on the basis of terror, if not probable cause. Thank you, Your Honors. Thank you, Kenneth. I just have one follow-up, one last question, if you don't mind, with regard, and just to confirm. In terms of the credibility of the witnesses, our standard review is the abuse of discretion, but the ultimate decision regarding the suppression is de novo review. It would be manifest weight and de novo, yes, Your Honor, instead of abuse of discretion. So, right, manifest weight. So, yes, the fact findings of the court would be a manifest weight finding. But there were no fact findings in that regard. Thank you, Your Honor. Thank you, Counsel. The case will be taken under bias and order issued in due course. You're excused. Thank you.